# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **06-21614** CIV-MORENO

MAGISTRATE JUDGE
SIMONTON

GUILLERMO MARTINEZ and PABLO LIBERATORI,

    Plaintiffs,

vs.

LARRY LIEBERMAN,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, GUILLERMO MARTINEZ ("Martinez") and PABLO LIBERATORI ("Liberatori") (Martinez and Liberatori will be referred to collectively as the "Plaintiffs"), by and through undersigned counsel, file suit against Defendant, LARRY LIEBERMAN a/k/a Lawrence Lieberman ("Lieberman"), and states:

### PARTIES, JURISDICTION AND VENUE

1. Martinez is a resident of Broward County, Florida, and at all times relevant to the allegations of this Complaint was a resident of Broward County, Florida, and is *sui juris*.

2. Liberatori is a resident of Miami-Dade County, Florida, and at all times relevant to the allegations of this Complaint was a resident of Miami-Dade County, Florida, and is *sui juris*.



3. Lieberman is a resident of Osceola County, Florida, and at all times relevant to the allegations of this Complaint was a resident of either Osceola or Miami-Dade Counties, Florida, and is *sui juris*.

4. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 because the matter involves a federal question.

5. The United States District Court for the Southern District of Florida is the proper venue for this case because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PERTINENT FACTS

6. The Plaintiffs entered into an oral partnership agreement with Lieberman in Miami, Florida, to design, develop, manufacture, distribute and sell products, holographic images, multimedia and other 3-dimensional products that incorporate holography, including 360 degree White Light Viewable Holograms in the form of the hologram rotating lamp with sound (the "Hologram Products").

7. The Florida partnership – 3D Magic – provided that Lieberman, Martinez and Liberatori were entitled to forty percent (40%), thirty percent (30%), respectively, of all profits generated from the Hologram Products.

8. Subsequently, 3D Magic began working to design, develop, manufacture, distribute and sell the Hologram Products.

9. Martinez contributed and enormous amount of time and resources in locating a company that could provide a rotating base with a lamp to display the Hologram Products and make prototypes.

10. Through his efforts, and during the course of several months, Martinez located and

2

contacted Rabbit Tanaka Corporation Limited ("Tanaka Hong Kong") and Rabbit Tanaka Corporation USA ("Tanaka USA") in Hong Kong and Texas, respectively.

11. On June 14, 2001, Tanaka Hong Kong and Tanaka USA responded to Martinez's inquiry by contacting him in Florida via e-mail. In their e-mail response to Florida, Tanaka Hong Kong and Tanaka USA requested that Martinez provide them with information about 3D Magic.

12. In response, 3D Magic – the Plaintiffs and Lieberman – informed Tanaka Hong Kong and Tanaka USA that 3D Magic was a product development firm that designs, purchases, manufactures and distributes proprietary products that incorporate 3D Magic's unique, patented and trademarked, and proprietary holographic and lenticular images and technologies.

13. 3D Magic also informed Tanaka Hong Kong and Tanaka USA that 3D Magic was a partnership consisting of three partners: Martinez – Vice President of Business and Product Development, Lieberman – Chief Holography Officer, and Liberatori - Vice President of Creativity.

14. 3D Magic also informed Tanaka Hong Kong and Tanaka USA that 3D Magic was a division of The Hologram Universe, an existing Florida corporation.

15. Tanaka Hong Kong and Tanaka USA was also informed by 3D Magic that it believed that a custom holographic image could be incorporated into one of Tanaka Hong Kong's and Tanaka USA's products.

16. After a series of e-mail exchanges between the parties wherein, in each instance, Tanaka Hong Kong and Tanaka USA contacted 3D Magic in Florida, the parties agreed that Tanaka Hong Kong and Tanaka USA would meet with 3D Magic in Miami, Florida on

July 11, 2001, to discuss the Hologram Products, the technology, manufacturing capabilities, and possibilities of the Hologram Products in the marketplace.

17. 3D Magic (the Plaintiffs and Lieberman) met with Tanaka Hong Kong and Tanaka USA at the Miami International Airport on July 11, 2001. Before any details were discussed, Tanaka Hong Kong and Tanaka USA executed a Nondisclosure Agreement, which provided that Florida law governed.

18. After the Nondisclosure Agreement was signed in Miami, Florida, by Tanaka Hong Kong and Tanaka USA, 3D Magic discussed with Tanaka Hong Kong and Tanaka USA the technology of holographs, the Hologram Products, manufacturing capabilities, and marketplace possibilities.

19. Also at the July 11, 2001, meeting in Miami, Florida, 3D Magic also informed Tanaka Hong Kong and Tanaka USA that 3D Magic was also pursuing opportunities other than only those with Tanaka Hong Kong and Tanaka USA, including opportunities in the point of sale merchandising, music and adult entertainment industries.

20. Also at the July 11, 2001, meeting in Miami, Florida, a prototype of the Hologram Products was provided to Tanaka Hong Kong and Tanaka USA.

21. After the initial July 11, 2001, meeting in Miami, Florida, Tanaka Hong Kong and Tanaka USA went to dinner with 3D Magic in Miami, Florida, to further discuss the technology of holographs, the Hologram Products, manufacturing capabilities, and marketplace possibilities.

22. On July 12, 2001, Tanaka Hong Kong and Tanaka USA contacted 3D Magic again in Florida, providing a Federal Express account number to 3D Magic to use when shipping prototypes to Tanaka Hong Kong and Tanaka USA. Within this communication with 3D

Magic in Florida, Tanaka Hong Kong and Tanaka USA requested that one prototype be shipped to Hong Kong and two prototypes be shipped to Fort Worth, Texas - one for Tanaka Hong Kong and Tanaka USA to introduce to Spencer Gifts, a national retailer with forty-five (45) stores in Florida, and the second for Tanaka Hong Kong's and Tanaka USA's patent attorneys.

23. After the July 11, 2001, meeting in Miami, Florida, Tanaka Hong Kong and Tanaka USA contacted 3D Magic (the Plaintiffs and Lieberman) in Florida and expressed their genuine interest in pursuing a joint venture with 3D Magic to further develop, manufacture, distribute and sell the Hologram Products worldwide.

24. Between July 15, 2001, and July 26, 2001, Tanaka Hong Kong and Tanaka USA contacted 3D Magic in Florida on numerous occasions regarding the viability of 3D Magic's technology.

25. Based on the positive interest expressed by Tanaka Hong Kong and Tanaka USA, the Plaintiffs organized and managed the entire production of the shoot of the new hologram product on July 25, 2001, in Miami-Dade County, Florida, which was ultimately developed and titled "*Jessica.*"

26. Subsequently, Lieberman went to Hong Kong on behalf of 3D Magic (the Plaintiffs and Lieberman) and successfully presented the *Jessica* Hologram product to Tanaka Hong Kong and Tanaka USA.

27. Before a final joint venture agreement could be finalized between 3D Magic and Tanaka Hong Kong and Tanaka USA, the September 11, 2001, terrorist attacks occurred, causing negotiations to halt.

28. Unbeknownst to the Plaintiffs and without the Plaintiffs' consent, Lieberman began

receiving consulting fees and royalty advances in Florida from Tanaka Hong Kong and Tanaka USA as early as July 2001. Also, unbeknownst to the Plaintiffs, Lieberman filed an application for a patent with the United States Patent and Trademark Office, identifying himself as the sole inventor of the Hologram Products, even though the Plaintiffs and Lieberman invented the Hologram Products.

29. Also around July 2001, Tanaka Hong Kong and Tanaka USA began communicating with only Lieberman in Florida rather than all of the partners, breaking off all day-to-day e-mail communication with the Plaintiffs. These continued communications between Lieberman and Tanaka Hong Kong and Tanaka USA occurred wherein, in each instance, Tanaka Hong Kong and Tanaka USA contacted Lieberman in Florida.

30. Within their continued communication with only Lieberman in Florida after around July 2001, and without the Plaintiffs' knowledge or consent, Tanaka Hong Kong and Tanaka USA enticed Lieberman in Florida to execute in Florida a licensing agreement with Tanaka Hong Kong and Tanaka USA.

31. The license agreement signed by Lieberman in Florida provided that Lieberman license the *exclusive* use of the Hologram Products, which had been developed by 3D Magic (the Plaintiffs and Lieberman) in Florida, to Tanaka Hong Kong and Tanaka USA, thereby hindering 3D Magic from other business opportunities in the point of sale, music and adult entertainment industries.

32. The license agreement signed by Lieberman in Florida also provided that any and all intellectual property evolving out of the development or manufacturing of the Hologram Products was licensed to Tanaka Hong Kong and Tanaka USA, thereby hindering 3D Magic from other business opportunities in the point of sale, music and adult

entertainment industries.

33. The license agreement signed by Lieberman in Florida also excluded the Plaintiffs from receiving any pecuniary gains.

34. After September 11, 2001, despite the Plaintiffs' repeated inquiries regarding the status of the joint venture between 3D Magic and Tanaka Hong Kong and Tanaka USA, the Plaintiffs were lied to by Tanaka Hong Kong, Tanaka USA and Lieberman, informed that no progress had been made to introduce the Hologram Products into the marketplace.

35. More than two years later - that is, on or about February 17, 2004, Liberatori attended the New York Toy Show and, to his surprise, saw the Hologram Products being advertised by Tanaka Hong Kong and Tanaka USA as the "Elvis Presley Hologram Lamp." Liberatori also saw the agents of Tanaka Hong Kong and Tanaka USA that 3D Magic met with at the Miami International Airport more than two years prior.

36. The agents of Tanaka Honk Kong and Tanaka USA told Liberatori that despite their knowledge of 3D Magic, Tanaka Hong Kong and Tanaka USA proceeded with developing and marketing the Hologram Products with only Lieberman, one of the partners of 3D Magic, in his individual capacity.

37. Thus, despite Tanaka Hong Kong's and Tanaka USA's knowledge of the partnership between the Plaintiffs and Lieberman, Tanaka Hong Kong and Tanaka USA contacted in Florida and subsequently entered into a written agreement in Florida with only Lieberman to manufacture, distribute and sell the Hologram Products *without* the Plaintiffs' knowledge or authorization.

38. A United States Patent – Patent No. 6,844,948 – was issued by the United States Patent and Trademark Office, identifying Lieberman as the sole inventor of the Hologram

7

Products.

39. All conditions precedent have either been completed by the Plaintiffs or waived by the Defendants

## COUNT I

### CORRECTION OF INVENTORSHIP AND OWNERSHIP OF PATENT

40. The Plaintiffs hereby incorporate Paragraphs 1 through 39 as if fully set forth herein.

41. By virtue of the collaboration between the Plaintiffs and Lieberman, the Plaintiffs should be listed as inventors upon Patent No. 6,844,948.

42. The failure to list the Plaintiffs as inventors upon Patent No. 6,844,948 arose through the deceptive intent of Lieberman.

43. Plaintiffs accordingly petition the Court pursuant to 35 U.S.C. § 256 to order correction of Patent No. 6,844,948 to name the Plaintiffs as co-inventors of the subject matter of Patent No. 6,844,948. In addition, Plaintiffs ask that the Court name the Plaintiffs as at least co-owners of Patent No. 6,844,948.

WHEREFORE, the Plaintiffs respectfully demand that judgment be entered in their favor and against Tanaka USA for money damages, including lost profits, prejudgment and postjudgment interest, punitive damages, and any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand that they receive a trial by jury on all triable claims.

Dated: June 23, 2006.

Respectfully submitted,

**LOCKE LAW, P.A.**
Attorneys for Plaintiffs
P.O. Box 841035
Pembroke Pines, Florida 33084
(954) 382-8858
(954) 382-0908 facsimile

By: _____
Wendell T. Locke, For the Firm
Florida Bar No. 0119260

**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
Guillermo Martinez and Pablo Liberatori

### DEFENDANTS
Larry Lieberman, a/k/a Lawrence Lieberman

**(b)** County of Residence of First Listed Plaintiff   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Osceola
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Wendell T. Locke, Esq.
Locke Law, P.A., P.O. Box 841035, Pembroke Pines, FL 33084
(954) 382-8858

Attorneys (If Known)   CIV-MORENO

06-21614

MAGISTRATE JUDGE SIMONTON

**(d)** Check County Where Action Arose: ✓☐ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
✓☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

1:06 CV 21614 - Moreno - Simonton

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability |  | ☐ 650 Airline Regs. | ■ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)

✓☐ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ✓☐ NO     b) Related Cases ☐ YES ✓☐ NO
JUDGE                                      DOCKET NUMBER

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
35 U.S.C. sec. 256

LENGTH OF TRIAL via 3 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $     CHECK YES only if demanded in complaint:
JURY DEMAND:  ✓☐ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   June 23, 2006

FOR OFFICE USE ONLY
AMOUNT _____   RECEIPT # 53748   IFP

AO 120 (Rev. 2/99)

| COMMISSIONER OF PATENTS & TRADEMARKS<br>2121 CRYSTAL DRIVE<br>SUITE 1100<br>ARLINGTON, VA 22201 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ____Southern District of Florida____ on the following    X  Patents or    ☐ Trademarks:

| DOCKET NO.<br>06-21614-CIV-MORENO | DATE FILED<br>6/26/06 | U.S. DISTRICT COURT<br>Southern District of Florida |
|---|---|---|
| PLAINTIFF<br>Guillermo Martinez, et al. | | DEFENDANT<br>Larry Lieberman |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,844,948 | not provided | Lieberman |
| 2 | | | |
| 3 | | | . |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment  ☐ Answer  ☐ Cross Bill  ☐ Other Pleading |||
|---|---|---|---|
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | . |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>CLARENCE MADDOX | (BY) DEPUTY CLERK<br>Lisa I. Streets | DATE<br>6/26/06 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Commissioner    Copy 3—Upon termination of action, mail this copy to Commissioner
Copy 2—Upon filing document adding patent(s), mail this copy to Commissioner    Copy 4—Case file copy